# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs April 9, 2013

## STATE OF TENNESSEE v. LADARIUS DEVONTE MAXWELL

**Appeal from the Circuit Court for Madison County**
**No. 11510     Donald H. Allen, Judge**

**No. W2012-00729-CCA-R3-CD  -  Filed September 13, 2013**

The Defendant, Ladarius Devonte Maxwell, challenges his jury convictions for two counts of attempted second degree murder, a Class B felony,  and two counts of aggravated assault, a Class C felony, alleging that the evidence was insufficient to support his convictions and that the trial court improperly imposed consecutive sentencing.  After a thorough examination of the record and the applicable authorities, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and JEFFREY S. BIVINS, JJ., joined.

Gregory D. Gookin, Jackson, Tennessee, for the appellant, Ladarius Devonte Maxwell.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Senior Counsel; James G. (Jerry) Woodall, District Attorney General; and Shaun A. Brown, Assistant District Attorney General; for the appellee, State of Tennessee.

## OPINION

### FACTUAL BACKGROUND

On September 6, 2011, a Madison County Grand Jury returned a four-count indictment against the Defendant:  Count 1, attempted first degree murder (Cedric Kinnie); Count 2, aggravated assault (Cedric Kinnie); Count 3, attempted first degree murder (Lavelle Kinnie); and Count 4, aggravated assault (Lavelle Kinnie).  A jury trial was held on January 26, 2012, and the following facts were adduced.

*I. Jury Trial*

Cedric Kinnie,[1] one of the victims in this case, testified that on March 3, 2011, he and his brother, Lavelle Kinnie,[2] were on their way home in his 1990 Buick LaSabre when they passed by a convenience store where the Defendant was standing outside. Cedric testified that he was aware that the Defendant and Lavelle had problems in the past but that he was not aware of the source of their animosity. Cedric further testified that as they passed the Defendant, he made several gestures at the car which Cedric described as, "You know, just throwing up his hands and talking or yelling or whatever."

Approximately an hour later, Cedric and his brother arrived at Cedric's home, 251 Lincoln Courts, located about a quarter of a mile from the convenience store. As Cedric and Lavelle were exiting the car, Cedric noticed the Defendant walking across the street toward them. When the Defendant was approximately ten to fifteen feet away, Cedric testified that the Defendant drew a black handgun and began firing at them. Both Cedric and Lavelle ducked back into the car and subsequently drove away. Neither Cedric nor Lavelle sustained injuries as a result of the attack, however, there was damage to Cedric's Buick. Cedric further testified that neither he nor Lavelle had a gun that day and that he recalled approximately five shots having been fired by the Defendant.

After the two escaped, Cedric let his brother out of the car a few blocks away and subsequently received a phone call from his girlfriend that the police had arrived on the scene. Cedric returned to the scene of the crime where he spoke briefly with Officer David Evans of the Jackson Police Department (JPD).

Officer Evans testified that he was on patrol on March 3, 2011, when, around 2:50 p.m., he received a report that shots were fired at 251 Lincoln Courts. As Officer Evans was in the process of gathering information and speaking to potential witnesses, Cedric returned to the scene. Officer Evans noted that Cedric had no apparent injuries but noted that the driver-side turn signal appeared to have been shot out. Officer Evans testified that the JPD was unable to uncover any weapon on the scene and discovered no bullets or shell casings. Officer Evans did not take an official statement from Cedric at that time.

The final witness offered by the State was Sergeant Alberto Colon of the JPD. Sergeant Colon testified that he became involved in the investigation on March 16, 2011, when Cedric contacted the JPD indicating that he wanted to make a formal statement

---

[1] Because they share the same surname, we will refer to the victims by their first names for clarity.

[2] Lavelle Kinnie died on April 7, 2011.

regarding the March 3 shooting. Sergeant Colon testified that Cedric identified the Defendant out of a photo-lineup as the person that shot at him and his brother on March 3 and signed his name underneath the picture of the Defendant. A copy of the photo-lineup with Cedric's signature was entered into evidence.

Based on this information, Sergeant Colon interviewed the Defendant on April 7, 2011. There, the Defendant was given his Miranda warnings, signed a waiver form, and dictated a statement to Sergeant Colon which he later initialed and signed. In this statement, the Defendant claimed, "I did shoot back . . . I shot twice and my gun jammed, I left and ran into them again[. B]efore I saw them[,] I unjammed my gun. I shot till [sic] the gun was empty. I had about 5 or 6 bullets."

At the close of the State's proof, the Defendant moved for a judgment of acquittal as to both attempted murder charges and the charge as to aggravated assault of Lavelle. He argued that there had not been sufficient proof adduced to demonstrate an intent to kill either of the Kinnies and, because Lavelle was not present to testify, the proof was insufficient for the jury to find the Defendant committed aggravated assault on Lavelle. The State responded that Cedric's testimony in combination with the Defendant's statement, as introduced through Sergeant Colon, was sufficient for the jury to find that the Defendant had committed the crimes for which he was charged. The trial court took the matter under advisement and ultimately denied the motion for judgment of acquittal. The Defendant did not put on any proof.

At the close of trial, the Defendant was convicted as charged on both counts of aggravated assault, Counts 2 and 4, and found guilty of the lesser-included offense of attempted second degree murder in Counts 1 and 3.

## II. Sentencing Hearing

A sentencing hearing was held on March 5, 2012. The presentence report was admitted into evidence, and the Defendant's mother, Patricia Maxwell, testified on his behalf. She relayed his difficult childhood, how his behavior seemed to take a turn for the worse after the death of his grandmother in 2006, and of his subsequent diagnosis with ADHD and Bipolar Disorder. The Defendant urged the court to consider, in mitigation, the youth of the Defendant, his mental health diagnosis, and his lack of criminal convictions as an adult.

At the close of the sentencing hearing, the trial court merged the aggravated assault convictions with the convictions for attempted second degree murder. The trial court sentenced the Defendant as a Range I, standard offender to twelve years on each count to be

served at thirty percent. In a lengthy and detailed ruling from the bench, the trial court ordered the Defendant's sentences to be served consecutively, for an effective sentence of twenty-four years. To support its decision, the trial court found that the Defendant was an offender whose record of criminal activity was extensive and that the Defendant was a dangerous offender whose behavior indicated he had little to no regard for human life and had no hesitation in committing a crime where the risk to human life was high.

### III. Motion for New Trial

A motion for new trial was timely filed, and a hearing was held on March 19, 2012. The Defendant asserted two errors: (1) that the evidence was insufficient to support the jury's verdict of guilt and (2) that the court erred in imposing consecutive sentences.

On April 10, 2012, the trial court denied the motion for a new trial, finding that the evidence was sufficient to support all four convictions and that its imposition of two twelve-year sentences to be served consecutively for a total effective sentence of twenty-four years was proper. The Defendant filed a timely notice of appeal.

## ANALYSIS

The Defendant contends that the evidence was insufficient to support his convictions for attempted second degree murder and aggravated assault and that the trial court erred in the imposition of consecutive sentences. The State responds that the evidence was sufficient to support the Defendant's convictions and that the trial court properly imposed consecutive sentences.

### I. Sufficiency of the Evidence

An appellate court's standard of review when the defendant questions the sufficiency of the evidence on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). This court does not reweigh the evidence; rather, it presumes that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the State. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); see also State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions regarding witness credibility, conflicts in testimony, and the weight and value to be given to evidence were resolved by the jury. See

State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). A guilty verdict "removes the presumption of innocence and replaces it with a presumption of guilt, and [on appeal] the defendant has the burden of illustrating why the evidence is insufficient to support the jury's verdict." Id.; State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). "This [standard] applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of [both] direct and circumstantial evidence." State v. Pendergrass, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999).

Our supreme court recently clarified that circumstantial evidence is as probative as direct evidence. State v. Dorantes, 331 S.W.3d 370, 379-81 (Tenn. 2011). In doing so, the supreme court rejected the previous standard which "required the State to prove facts and circumstances so strong and cogent as to exclude every other reasonable hypothesis save the guilt of the defendant, and that beyond a reasonable doubt." Id. at 380 (quoting State v. Crawford, 470 S.W.2d 610, 612 (Tenn. 1971)) (quotation marks omitted). Instead, "direct and circumstantial evidence should be treated the same when weighing the sufficiency of such evidence." Id. at 381. To that end, the duty of this court "on appeal of a conviction is not to contemplate all plausible inferences in the [d]efendant's favor, but to draw all reasonable inferences from the evidence in favor of the State." State v. Sisk, 343 S.W.3d 60, 67 (Tenn. 2011).

### A. Attempted Second Degree Murder

As to his convictions for attempted second degree murder, the Defendant specifically argues that the evidence is insufficient because "[n]o proof was adduced to show that Appellant intended to kill either Cedric or Lavelle Kinnie." The State responds that the evidence adduced at trial was sufficient for convictions on both the attempted second degree murder charges. We agree with the State.

A person is guilty of the offense of second degree murder, as relevant here, upon committing a knowing killing of another. Tenn. Code Ann. § 39-13-210(a)(1). A person attempts to commit second degree murder when he or she acts with the intent to knowingly kill the victim and his or her conduct constitutes a substantial step toward the victim's death. Tenn. Code Ann. § 39-12-101(a)(3). "A person acts knowingly with respect to a result of the person's conduct when the person is aware that the conduct is reasonably certain to cause the result." Tenn. Code Ann. § 39-11-302(b). Whether a defendant acts knowingly is a question of fact for the jury. See State v. Inlow, 52 S.W.3d 101, 104-05 (Tenn. Crim. App. 2000). The jury may infer a defendant's mental state from "the character of the assault, the nature of the act and from all the circumstances of the case in evidence." Id. at 105.

We conclude that there was sufficient evidence for a jury to find, beyond a reasonable

doubt, that the Defendant attempted to commit second degree murder. Viewed in a light most favorable to the State, a reasonable jury could have found that the Defendant saw the two victims as they passed him at the convenience store. There was animus between him and Lavelle, so the Defendant decided to go to the apartment complex, where he knew one of the victims lived, and wait for them to return. While the Defendant awaited Lavelle and Cedric's return, he "unjammed" his gun to ensure it would fire. Upon their arrival, the Defendant began walking toward the victim's car, and when the Defendant was approximately ten to fifteen feet away, fired five to seven shots at the victims, damaging Cedric's car, before they managed to escape.

Therefore, we conclude that given the character of the assault—the Defendant's firing every bullet in his gun at the victims— and the nature of the act—use of a deadly weapon directed at the victims from such a short distance away, there was ample evidence from which a reasonable jury could conclude that the Defendant knowingly attempted to kill both victims and took a substantial step toward the commission of said offense when he fired the shots at the victims from ten to fifteen feet away.

### B. Aggravated Assault

The Defendant also challenges the sufficiency of evidence for his two aggravated assault convictions.

As relevant here, aggravated assault is defined as follows: "A person commits aggravated assault who ... [i]ntentionally or knowingly commits an assault as defined in § 39-13-101 and . . . [u]ses or displays a deadly weapon[.]" Tenn. Code Ann. § 39-13-102(a)(1)(A)(ii). Tennessee Code Annotated section 39-13-101 states, in pertinent part, that "[a] person commits assault who . . . [i]ntentionally or knowingly causes another to reasonably fear imminent bodily injury[.]" Tenn. Code Ann. § 39-13-101(a)(2).

Viewing the evidence in a light most favorable to the State, we conclude that there was sufficient evidence for the jury to find the Defendant guilty of aggravated assault. Cedric testified that the Defendant approached him and Lavelle and began shooting at them from a distance of approximately ten to fifteen feet away. Further, in his statement to Sergeant Colon, the Defendant admitted to using a gun and firing five to six shots at the victims. Cedric testified that he was in fear of his life at that point and that his brother ducked behind the vehicle and fled the scene with him after the Defendant fired multiple shots. Cedric also testified that his car sustained damage during the incident, which further provides evidence that the Defendant fired the shots directly at the victims. Accordingly, Cedric's testimony and the Defendant's statement to Sergeant Colon provided ample evidence to support the jury's finding that the Defendant used a deadly weapon, knowingly placing the victims in

-6-

fear of impending bodily harm or death.  Consequently, the Defendant is not entitled to relief on this issue.

## *II.  Consecutive Sentencing*

The Defendant contends that the trial court erred in imposing consecutive sentencing because his criminal record was comprised of juvenile offenses and were mostly misdemeanors. The State responds that consecutive sentencing was properly imposed because the Defendant's juvenile adjudications involved multiple felony offenses. We agree with the State.

To facilitate appellate review, "it is critical that trial courts adhere to the statutory requirement set forth in Tennessee Code Annotated section 40-35-210(e)" and articulate in the record its reasons for imposing the specific sentence. See State v. Bise, 380 S.W.3d 682, 705 n.41 (Tenn. 2012). The standard of review on the issue of consecutive sentencing is unclear under our State's current jurisprudence. State v. Ray Neil Thompson, M2012-01064-CCA-R3-CD, 2013 WL 1912591 (Tenn. Crim. App. May 8, 2013). Our supreme court recently announced that "sentences imposed by the trial court within the appropriate statutory range are to be reviewed under an abuse of discretion standard with a 'presumption of reasonableness.'" Bise, 380 S.W.3d at 708.  Our supreme court has further explicitly stated that "the abuse of discretion standard, accompanied by a presumption of reasonableness, applies to within-range sentences that reflect a decision based upon the purposes and principles of sentencing, including the questions related to probation or any other alternative sentence." State v. Caudle, 388 S.W.3d 273, 278-79 (Tenn. 2012).

However, in the arena of consecutive sentencing, our supreme court has not issued a definitive ruling on the standard of review to be applied by this court. In response, some panels of this court are applying an abuse of discretion standard based upon the recent decisions of Bise and Caudle, while others are continuing to apply a de novo standard of review until instructed otherwise by our supreme court, and yet others are avoiding the standard of review altogether in deciding the issue. See generally State v. Robert Fusco, No. M2012-01068-CCA-RM-CD, 2012 WL 6062856, at *38-39 (Tenn. Crim. App. Dec. 06, 2012) (silent on standard of review to be applied), perm. app. denied, (Tenn. Apr.11, 2013); State v. Eric Demond McCathern, No. M2011-01612-CCA-R3-CD, 2012 WL 5949096, at *4-5 (Tenn. Crim. App. Nov. 16, 2012) (majority applying abuse of discretion standard of review and concurring opinion advocating de novo standard of review), perm. app. denied, (Tenn. Feb. 25, 2013).

Tennessee Code Annotated section 40-35-115(b) provides that a trial court may order sentences to run consecutively if it finds any one of the following criteria by a preponderance

of the evidence:

> (1) The defendant is a professional criminal who has knowingly devoted the defendant's life to criminal acts as a major source of livelihood;

> (2) The defendant is an offender whose record of criminal activity is extensive;

> (3) The defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;

> (4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;

> (5) The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;

> (6) The defendant is sentenced for an offense committed while on probation; or

> (7) The defendant is sentenced for criminal contempt.

Tenn. Code Ann. § 40-35-115. These criteria are stated in the alternative; therefore, only one need exist to support the imposition of consecutive sentencing. See id. However, the imposition of consecutive sentencing is subject to the general sentencing principles that the overall sentence imposed "should be no greater than that deserved for the offense committed" and that it "should be the least severe measure necessary to achieve the purposes for which the sentence is imposed[.]" Tenn. Code Ann. § 40-35-103(2), (4).

In the instant case, the trial court imposed consecutive sentencing on the bases that the Defendant's record of criminal activity was extensive and that he was a dangerous offender. Tenn. Code Ann. § 40-35-115(2), (4). In discussing criterion (2), the court noted that though the Defendant was very young, not yet nineteen at the time of sentencing, the

court described the Defendant's criminal record as follows:

> Now, as far as the request for consecutive sentencing, I have looked at this in great detail[,] and I certainly consider his young age. I know he's 18 and a half years of age, but it's probably one of the worst records I've seen in terms of juvenile behavior for someone who's that age. He's now 19 years of age, but in his first 18 and a half years on this earth, he's been in trouble since he was about 13 up until this trouble in March of [2011]. The Court finds that the Defendant is an offender whose record of criminal activity is extensive. Even though it's a juvenile records, it certainly is extensive. I find that to be a factor.

Despite the Defendant's contention that the trial court's use of his juvenile convictions to support consecutive sentencing was in error, "[t]his Court has repeatedly approved the consideration of a defendant's history of juvenile adjudications in determining whether a defendant has an extensive record of criminal activity for consecutive sentencing purposes." Lamario Sumner a/k/a Lamario Flemming v. State, W2009-00453-CCA-R3-PC, 2010 WL 4544955, at *8 (Tenn. Crim. App. Nov. 10, 2010); see State v. Gann, 251 S.W.3d 446, 465 (Tenn. Crim. App. 2007); State v. Mickens, 123 S.W.3d 355, 396 (Tenn. Crim. App. 2003); State v. Deshaun Emmanuel Brown and Jerome Cardell Holt, M2011-01383-CCA-R3-CD, 2012 WL 6115603, at *12 (Tenn. Crim. App. Dec. 10, 2012), perm. app. denied, (Tenn. Apr. 10, 2013); State v. Andre Perkins, No. W2007-02774-CCA-R3-CD, 2009 WL 1741400, at *9 (Tenn. Crim. App. June 17, 2009); State v. Robert Donterious Connor, No. M2007-01619-CCA-R3-CD, 2008 WL 4614449, at *14 (Tenn. Crim. App. Oct. 17, 2008). Further, while the Defendant correctly points out that many of his juvenile adjudications were misdemeanors, the record reflects that at least five of those adjudications were felony convictions: aggravated burglary; aggravated robbery; carjacking; felony evading arrest, and especially aggravated kidnapping. If the Defendant had been an adult when these offenses, among others, were committed, they would have been felony convictions that would have required extensive jail time. Considering the Defendant's young age in conjunction with the number and character of the offenses he committed as a juvenile, we conclude that the trial court had ample support for its finding that the Defendant was an offender with an extensive record of criminal activity. Given this conclusion, it is unnecessary for this court to analyze the trial court's application of the "dangerous offender" criterion, see Tenn. Code Ann. § 40-35-115(b)(4), to support consecutive sentencing. See State v. Denise Dianne Brannigan, No. E2011-00098-CCA-R3-CD, 2012 WL 2131111, at *19 (Tenn. Crim. App. June 13, 2012)(stating that because the statutory criterion are stated in the alternative, only one need exist to support the imposition of consecutive sentencing).[3] Nevertheless, we briefly note

_____

[3] We note that the Defendant did not present any argument in his brief that the trial court's application of the
(continued...)

that the trial court also made sufficient findings to support its application.

The record in this case reflects that the trial court properly considered the requisite statutory factors in determining that consecutive sentencing was appropriate in this case. Based upon either standard of review, de novo or abuse of discretion, we affirm the trial court's imposition of consecutive sentencing.

<u>CONCLUSION</u>

Based upon the foregoing, the judgments of the Madison County Circuit Court are affirmed.

_____
D. KELLY THOMAS, JR., JUDGE

---

[3](...continued)
dangerous offender factor was in error. He solely argued that the trial court's finding that he had an extensive record of criminal activity was in error due to its use of his juvenile adjudications.